UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


AMERICA CAN!,               )
                                  )
         Plaintiff,         )
                                  )        CIVIL ACTION NO.
VS.                       )
                                  )        3:18-CV-1709-G
CAR DONATIONS FOUNDATION, ET   )
AL.,                     )
                                  )
         Defendants.     )


## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is the motion of the defendant, Metro Metals Corporation

("Metro Metals"), to dismiss for lack of personal jurisdiction (Motion to Dismiss for

Lack of Personal Jurisdiction (docket entry 14)), the defendants' Joint Rule 12(b)(6)

Motion to Dismiss (docket entry 18), and the defendants' Joint Rule 12(f) Motion to

Strike (docket entry 16).  For the reasons set forth below, the motion to dismiss for

lack of personal jurisdiction is **GRANTED**, the 12(b)(6) motion to dismiss for failure

to state a claim is **DENIED**, and the 12(f) motion to strike is **DENIED**.

# I.  FACTUAL BACKGROUND

This case arises from fundraising activities in connection with Make-A-Wish North Texas.  Plaintiff's Original Complaint ¶¶ 2-3 (docket entry 1).  According to the complaint, the defendants have unlawfully used the plaintiff America CAN!'s trademark, "Write off the car, not the Kid"®, to manipulate search engine results to display the defendants' website, www.wheelsforwishes.org/northtexas, in search results when users search the plaintiff's trademarked phrase.  *Id.* ¶¶ 82-83.

America CAN!, a 501(c)(3) (not-for-profit) corporation organized under the laws of Texas with its principal place of business in Texas, performs charitable fundraising services by collecting and reselling used vehicles, including motorcycles, watercraft, and automobiles.  *Id.* ¶¶ 4-5.  In connection with its fundraising services, America CAN! uses its registered trademark "Write off the car, not the Kid"®. *Id.* ¶ 5.

The defendant Car Donation Foundation ("CDF") also performs fundraising services involving the collection and resale of vehicles.  *Id.* ¶ 27.  CDF has entered into agreements with various Make-A-Wish chapters, including Make-A-Wish North Texas, to solicit charitable vehicle donations across the United States through radio, newspaper, and internet advertisements, including its website www.wheelsforwishes.org.  *Id.* ¶¶ 36-37, 46.  CDF calls this program "Wheels for Wishes."  *Id.* ¶ 37.  CDF retained the defendant Metro Metals, a corporation that

auctions and scraps vehicles, from 2010-2011 to take calls from prospective donors to Wheels for Wishes. *Id.* ¶¶ 29, 38. CDF thereafter contracted with the defendant National Fundraising Management ("NFM"), a professional fundraising company, from 2011-2015 to have NFM manage CDF's Wheels for Wishes program. *Id.* ¶¶ 29, 41-42. Under this contract, NFM received phone calls from prospective donors, prepared all advertisements and solicitation materials for CDF, and issued tax receipts to donors. *Id.* ¶ 43. America CAN! alleges that in exchange for these services, CDF paid NFM a substantial portion of CDF's net proceeds generated from vehicle auctions. *Id.*

¶¶ 41-42. America CAN! further alleges that each defendant has solicited and received donations from individuals in Texas. *Id.* ¶¶ 6-8.

Each defendant is incorporated under the laws of Minnesota and maintains its principal place of business in Minnesota. *Id.* ¶¶ 6-8. William Bigley ("Bigley") and Randy Heiligman ("Heiligman") manage, control, or own both NFM and Metro Metals, but they have no official position in CDF. *Id.* ¶¶ 29, 31. According to the declaration of Len Refford, controller of Metro Metals, Metro Metals is not a subsidiary of either CDF or NFM, a fact that America Can! Does not dispute. Declaration of Len Refford, ("Declaration") ¶ 18 (docket entry 15-1); *see generally* Plaintiff America CAN!'s Response to Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) ("Plaintiff's Response") (docket entry 22). Metro Metals maintains a

separate headquarters from CDF and NFM.  Declaration ¶ 19; Complaint ¶¶ 6-8.

With the exception of Bigley and Heiligman, Metro Metals does not share any

employees or officers with either CDF or NFM.  Declaration ¶ 20.  Metro Metals

maintains separate corporate records, bank accounts, financial records, accounting

records, employees, and officers.  *Id.* ¶ 21.  Metro Metals manages and controls its

own corporate policy and day-to-day operations, and it does not co-mingle funds with

either CDF or NFM.  *Id.* ¶¶ 22, 24.

## II.  PROCEDURAL BACKGROUND

On June 29, 2018, America CAN! brought this suit for trademark

infringement, trademark dilution, and unfair competition against the defendants

CDF, NFM, and Metro Metals.  Complaint ¶ 1.  American CAN! alleges that the

defendants used its trademark "Write off the car, not the Kid"® in a manner that has

led potential donors to believe that the defendants are associated with America

CAN!, or that America CAN! has endorsed or approved the defendants' activities,

through manipulation of internet search results.  *Id.* ¶¶ 82, 87.  America CAN! claims

that this confusion has caused it substantial and irreparable harm.  *Id.* ¶ 87.  America

CAN! asserts that each defendant individually solicited and received donations from

individuals located in Texas, and that each defendant is an alter ego of the other.  *Id.*

¶¶ 6-9.  Under this theory, America CAN! argues that the jurisdictional contacts of

any one defendant can be imputed to another.  Plaintiff's Response at 5.

On September 10, 2018, Metro Metals moved to dismiss for lack of personal jurisdiction, arguing that it has no minimum contacts with Texas, and that it is not the alter ego of either of the other defendants. Defendant Metro Metals Corporation's Memorandum in Support of its Motion to Dismiss for Lack of Personal Jurisdiction (docket entry 15) at 7-9. America CAN! filed a response brief on October 1, 2019. *See* Plaintiff's Response. Metro Metals filed a reply on October 15, 2019. *See* Defendant Metro Metals Corporation's Reply Memorandum in Support of its Motion to Dismiss for Lack of Personal Jurisdiction (docket entry 25).

On September 10, 2019, all three defendants jointly moved to dismiss the complaint for failure to state a claim on the grounds that America CAN! never identified an actual or specific use in commerce of the trademarked phrase "Write off the car, not the Kid"®. Defendants' Joint Rule 12(b)(6) Motion to Dismiss at 1. The defendants contend that wheelsforwishes.org's search result placement is the result of organic search algorithms. Defendants' Memorandum in Support of Joint Rule 12(b)(6) Motion to Dismiss (docket entry 19) at 6. The defendants further assert that even if they had used America CAN!'s trademark in the website's metatags that this would not constitute a use in commerce likely to confuse consumers for purposes of trademark infringement. Defendants' Reply Memorandum in Support of Joint Rule 12(b)(6) Motion to Dismiss (docket entry 29) at 9-10. America CAN! responded to the defendants' motion to dismiss on October 1, 2018, arguing that the

defendants have used metatags or some other method of search optimization to manipulate search results. Response to Motion to Dismiss (docket entry 23) at 2. Thus, America CAN! argued it had pleaded a plausible claim for trademark infringement because the use of the defendants' alleged use of the trademark to manipulate search results constituted a use in commerce likely to cause consumer confusion. *Id.* at 5-9. The defendants filed a reply on October 15, 2018, in which they pointed to district court cases in other federal circuits that have denied a cause of action for trademark infringement based on metatagging because metatagging no longer affects search results. *See* Defendants' Reply Memorandum in Support of Joint Rule 12(b)(6) Motion to Dismiss (docket entry 29).

Finally, on September 10, 2018, all three defendants jointly moved to strike paragraphs 27-81 of America CAN!'s complaint. Defendants' Joint Rule 12(f) Motion to Strike. The defendants argue that this section is "wholly unrelated" to any of America CAN!'s claims, and that the allegations serve no other purpose than to "harass and prejudice [the defendants]." *Id.* at 1. America CAN! filed its response on October 1, 2018, arguing that the disputed paragraphs are necessary to show personal jurisdiction and the defendants' allegedly infringing activities. *See* Response to Motion to Strike (docket entry 24). The defendants filed a reply on October 15, 2018, restating their prior arguments. *See* Defendants' Reply Memorandum in Support of Joint Rule 12(f) Motion to Strike (docket entry 26).

### III. <u>ANALYSIS</u>

### A. <u>Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction</u>

#### 1. *The Factual Standard: A Prima Facie Case*

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident.  *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999).  If the district court chooses to decide the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a *prima facie* case for personal jurisdiction.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.

The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all conflicts in the facts are resolved in favor of the plaintiff.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.  In making its determination, the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods.  *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998); *Thompson v. Chrysler Motors Corporation*, 755 F.2d 1162, 1165 (5th Cir. 1985).  The court is not required to accept as true conclusory allegations, even if uncontroverted, in its prima-facie-case analysis.  *Panda Brandywine Corporation v. Potomac Electric Power Company*, 253 F.3d 865, 869 (5th Cir. 2001).

## 2. *The Legal Standard*

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that it would be amenable to the jurisdiction of a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984). Applying state law, this court must first determine whether Texas, the forum state, could assert long-arm jurisdiction. *Id.* Because the Texas long-arm statute confers jurisdiction to the limits of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v. Helicopteros Nacionales de Colombia*, S.A., 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal due process inquiry. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson*, 20 F.3d at 647 n.1; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.041, *et seq.* (Texas long-arm statute).

### 3. *Due Process Requirements*

Due process requires the satisfaction of three elements to exercise personal jurisdiction over a nonresident defendant: (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on its part such that the nonresident defendant could anticipate being haled into the courts of the forum state; (2) the claim must arise out of or be related to those activities; and (3) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir.), *cert. denied*, 548 U.S. 904 (2006); see also *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985). The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement. *Burger King*, 471 U.S. at 474 (quoting *Hanson*, 357 U.S. at 253); *Helicopteros Nacionales*, 466 U.S. at 417

(citing *Kulko v. California Superior Court*, 436 U.S. 84, 93-94 (1978); *Hanson*, 357 U.S. at 253). In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *J.R. Stripling v. Jordan Production Company, LLC,* 234 F.3d 863, 871 (5th Cir. 2000) (quotations and citations omitted). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987). A defendant's contacts with the forum that are unrelated to the underlying controversy cannot support a finding of specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1781 (2017) ("[a] corporation's 'continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that

activity") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011)). General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales de Colombia*, S.A., 466 U.S. at 415-16.

Under either a specific or general jurisdiction analysis, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King Corporation*, 471 U.S. at 474 (quoting *International Shoe Company v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945)). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (citations omitted). A plaintiff must establish a substantial connection between the nonresident defendant and the forum state. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir. 1992), *cert. denied*, 506 U.S. 867 (1992); *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374 (5th Cir. 1987) (citing *Burger King Corporation*, 471 U.S. at 475 n.18; *McGee v. International Life Insurance Company*, 355 U.S. 220, 223 (1957)).

A court must consider all factors when making the purposeful availment inquiry: "no single factor, particularly the number of contacts, is determinative." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982); see also *Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert. denied,* 510 U.S. 1195 (1994).

### 4. *Alter Ego*

In order to assert personal jurisdiction over a "related" corporation on the theory that it was under the control of another corporation or individual, the plaintiff must make a *prima facie* showing that the "related" corporation was so extensively controlled by the first corporation or individual that it was a mere instrumentality of the other. *Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir. 1978), *cert denied*, 441 U.S. 906 (1979); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 493 (5th Cir. 1974); *In re Ocean Ranger Sinking Off Newfoundland on February 15, 1982*, 589 F. Supp. 302, 310-11 (E.D. La. 1984); *Docutel Corporation v. S. A. Matra*, 464 F. Supp. 1209, 1218 (N.D. Tex. 1979) (Hill, J.).

5.  *Application*

The court concludes that it lacks personal jurisdiction over Metro Metals.

America Can! has not shown specific facts demonstrating that Metro Metals had any

involvement in the Wheels for Wishes website at issue or that Metro Metals had

contact with Texas citizens during or outside of its 2010-2011 contract with CDF.

The only support America CAN! offers for its argument that this court has personal

jurisdiction over Metro Metals, based on Metro Metals' own contacts, is the

conclusory allegation in its complaint that Metro Metals solicited donations in Texas

and contributed to the Wheels for Wishes website.  Complaint ¶¶ 7, 14-15.  The

court does not accept conclusory allegations as true.  Some of America CAN!'s factual

allegations conflict with statements of defendant Metro Metals.  Complaint ¶ 38;

Declaration ¶ 12.  Metro Metals states that during its 2010-2011 contract with CDF,

Metro Metals only provided services as an auction vendor for donated vehicles in

Minnesota (Declaration ¶ 12), while America CAN! claims that Metro Metals took

calls from donors in Texas who had responded to CDF's ads during this period.

Complaint ¶ 38.  The court resolves this conflict in favor of the plaintiff.  *Wilson*, 20

F.3d at 648; *Gardemal*, 186 F.3d at 592.

America CAN! contends that this court has both general and specific personal

jurisdiction over Metro Metals due to its minimum contacts with Texas.  Plaintiff

America CAN!'s Response to Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2)

(docket entry 22) at 3-4. America CAN! further argues that Metro Metals is an alter ego of both NFM and CDF, and that the latter organizations' contacts with Texas can thus be imputed to Metro Metals. *Id.* at 5-6.

The court, for the reasons discussed below, concludes that America CAN!'s jurisdictional arguments are without merit.

a. <u>Metro Metals Does Not Have Minimum Contacts with Texas</u>

America CAN! has not made a *prima facie* case that Metro Metals' affiliations with Texas are so "continuous and systematic as to render it essentially at home" in Texas. *Monkton Insurance Services, Limited v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (quoting *Daimler AG v. Bauman*, – U.S. –, 134 S. Ct. 746, 761 (2014)). It is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Id.* Metro Metals is a corporation organized under Minnesota law with its principal place of business in Minnesota. Complaint ¶ 7; Declaration ¶ 3. America CAN! has not shown that Metro Metals has offices, employees, customers, or operations in Texas. *See generally* Complaint; *see also* Plaintiff's Response. Nor has America CAN! pleaded any other specific facts showing that Metro Metals had any involvement in the website at issue, *see generally* Complaint; *see also* Plaintiff's Response, or that Metro Metals had any contacts with Texas apart from its role in receiving calls from prospective donors under its contract with CDF. Complaint ¶ 38. Even if Metro Metals received calls from Texas citizens

regarding donations to Wheels for Wishes from 2010-2011, these instances could hardly be considered continuous and systematic enough for Metro Metals to be considered at home in Texas. Cf. *Axxess Technology Solutions, Inc. v. Epic Systems Corporation*, Civil Action No. 3:16-CV-02893-N, 2017 WL 3841604, at *2 (N.D. Tex. January 23, 2017) (Godbey, J.) (finding no general personal jurisdiction over defendant when defendant was doing business with at least two hospital systems in Texas). American CAN!'s conclusory statement that Metro Metals solicits donations through national advertisements that reach Texas is also not in itself sufficient to confer general personal jurisdiction over Metro Metals. See *Bearry,* 818 F.2d at 376 (finding that engaging in a national advertising campaign does not support a finding of general jurisdiction); see also *Loumar, Inc. v. Smith*, 698 F.2d 759, 763 (5th Cir. 1983) (finding no personal jurisdiction based on national advertisements when there was "nothing in the record demonstrating which publications the ads ran in; what products were advertised; whether and how widely the publications were circulated in Texas; or the amount of business obtained from the advertisements").

America CAN! has not made a *prima facie* case for the exercise of specific personal jurisdiction over Metro Metals. Nevertheless, America CAN! argues that the internet activities of Metro Metals establish minimum contacts with Texas because Metro Metals does business over the internet, by itself or in conjunction with CDF, by soliciting car donations from Texas residents through the allegedly infringing

website.  Plaintiff's Response at 3-4.  America CAN! contends that the defendants'

website, which is "accessible to everyone in Texas who owns a personal computer or

otherwise has access to the internet," is evidence of the defendants' contacts with the

forum state.  Complaint ¶ 14.  America CAN! maintains that by soliciting donations

on a website which is both accessible in Texas and contains metatags that infringe

America CAN!'s intellectual property rights, the defendants have purposely availed

themselves of the benefits and protections of doing business in Texas, and are

therefore amenable to specific personal jurisdiction in this case.  Plaintiff's Response

at 1, 3-4.

America CAN! has not alleged in its complaint that Metro Metals contributed

to the website that is the subject of this cause of action.  Even if it assumed *arguendo*

that the website, by itself, is sufficient to confer personal jurisdiction in Texas over its

owner, the record still does not support America CAN!'s claim that Metro Metals had

any role in the solicitation of donations in Texas through the website.  The parties

agree that from 2010 to 2011, Metro Metals contracted with CDF to perform

services related to CDF's car donation program.  Complaint ¶ 38; Declaration

¶¶ 12-13.  Notably, America CAN! offers no other specific examples of Metro Metals'

alleged targeting of Texas.  Even if Metro Metals had taken calls from potential

donors in Texas, as America CAN! alleges, a unilateral act of another party is not

sufficient to confer specific personal jurisdiction.  *Burger King,* 471 U.S. at 474.  Cf.

*King v. Hawgwild Air, LLC*, Civil Action No. 3:08-CV-0153-L, 2008 WL 2620099, at *7 (N.D. Tex. June 27, 2008) (Lindsay, J.) (finding no specific jurisdiction when defendant's involvement in the forum state depended solely on who responded to defendant's national advertisement). For the same reason, receipt of a vehicle with Texas plates at the Metro Metals scrapyard in Minnesota does not confer specific personal jurisdiction over Metro Metals. America CAN! offers no other evidence of any advertisements or websites made or owned by Metro Metals that target Texas citizens. It cannot be said that Metro Metals should reasonably have expected to be haled into court in Texas through its 2010-2011 contract with CDF.

Accordingly, the court concludes that Metro Metals has not had sufficient contacts with Texas to confer either general or specific personal jurisdiction over it.

b. <u>Metro Metals and CDF Are Not Alter Egos</u>

To further support personal jurisdiction over Metro Metals, America CAN! argues that Metro Metals and CDF are alter egos of each other. Complaint ¶ 9. The court concludes that the two defendants are not alter egos. Thus, CDF's contacts with Texas cannot be imputed to Metro Metals.

First, America CAN! has pointed to no evidence showing that CDF and Metro Metals were even related companies, such as parent-subsidiary or sibling corporations. The only specific evidence America CAN! provided that shows a business relationship between Metro Metals and CDF is the 2010-2011 contract

- 17 -

between the companies. Complaint ¶ 38. America CAN! also claims that Metro

Metals stated in filings with the Minnesota Department of Public Safety that it used

the assumed names Car Donation Foundation, Wheels for Wishes, and Charity Car

Auctions. *Id.* ¶ 67. These facts alone do not establish that Metro Metals is an alter

ego of CDF, or that CDF is an alter ego of Metro Metals. Cf. *DDH Aviation, L.L.C.

v. Holly*, No. 3:02-CV-2598-P, 2005 WL 770595, at *8-*9 (N.D. Tex. March 31,

2005) (Solis, J.) (finding no alter ego relationship when corporation Affiliated

Computer Services hired corporation DDH Aviation, provided DDH Aviation

employees with benefits, allowed DDH Aviation to use Affiliated Computer Services'

logos and trademarks, and shared some officers and directors with DDH Aviation).

Without additional evidence, such as the nature of CDF's stockholdings in

Metro Metals, and/or the make-up of each company's board of directors—which

would tend to show CDF's influence over Metro Metals's affairs—America CAN! has

failed to sustain its burden of establishing that Metro Metals was under the control

of CDF. Compare *In re Ocean Ranger*, 589 F. Supp. at 310-11 (plaintiff met burden

of showing control) with *Walker*, 583 F.2d at 167 (plaintiff failed to meet burden of

showing control) and *Murdock v. Volvo of America Corporation*, 403 F. Supp. 55, 57

(N.D. Tex. 1975) (Taylor, Chief J.) (plaintiff failed to meet burden of showing

control) and *Docutel Corporation*, 464 F. Supp. at 1218 (plaintiff failed to meet burden

of establishing control). Likewise, none of the facts alleged in America CAN!'s

complaint shows that Metro Metals had any control over CDF.

Although America CAN! asserts that Bigley and Heiligman continue to manage

the day-to-day operations of the charity and provide management services to CDF,

Complaint ¶ 31, America CAN! also admits that Bigley and Heiligman have not had

an official position with CDF's board of directors since their resignation in 2013. *Id.*

Bigley and Heiligman's control over CDF's operations may be persuasive in arguing

that CDF was an alter ego of Bigley and Heiligman, but it does not show that Metro

Metals had control over CDF, or that CDF had control over Metro Metals. Likewise,

Bigley and Heiligman's control over and/or ownership of Metro Metals does not

establish that either of the corporations had control over the other. Cf. *DDH*

*Aviation, L.L.C.*, 2005 WL at *8 (finding no alter ego relationship when corporation

Affiliated Computer Services hired corporation DDH Aviation, provided DDH

Aviation employees with benefits, allowed DDH Aviation to use Affiliated Computer

Services logos and trademarks, and *shared some officers and directors* with DDH

Aviation) (emphasis added); see *EsNtion Records, Inc. v. JonesTM, Inc.*, CIV A

3:07-CV-2027-L, 2008 WL 2415977, at *5 (N.D. Tex. June 16, 2008) (Lindsay, J.)

(holding that the existence of common corporate officers does not automatically

establish an alter ego relationship).

Even if Metro Metals were an alter ego of CDF by virtue of CDF's control over Metro Metals, this would not result in CDF's contacts being imputed to Metro Metals. The only way that CDF's contacts would be imputed to Metro Metals under an alter ego theory would be if CDF was Metro Metals' alter ego due to Metro Metals' control over CDF. See *McCabe v. Henpil, Inc.*, 889 F. Supp. 983, 992 (E.D. Tex. 1995) (concluding that "the alter ego theory merely allows a plaintiff to hold a shareholder or parent corporation liable for the actions of a subsidiary corporation. However, this mechanism establishes liability in only one direction. While a parent corporation can be held liable for the acts of a subsidiary corporation under the alter ego theory, the subsidiary corporation is not liable for the acts of the parent or shareholder merely on the basis of alter ego").[1] America CAN!'s complaint has pled no facts that Metro Metals had any type of control over CDF, let alone the control necessary for an alter ego relationship.

Thus, the "control" or "alter-ego" theory will not support an assertion of either general or specific personal jurisdiction over Metro Metals due to CDF's contacts with Texas.

---

[1] The court is not bound by the law of other circuits and therefore rejects plaintiff's argument based on *Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015).

c. <u>Metro Metals and NFM Are Not Alter Egos</u>

To further support personal jurisdiction over Metro Metals, America CAN! contends that Metro Metals is also an alter ego of NFM, which is an alter ego of CDF. Complaint ¶ 9. In support of this claim, America CAN! argues that CDF and NFM had a contractual relationship from 2011-2015 in which CDF, NFM's only client, shared a substantial portion of its net proceeds generated from vehicle auctions with NFM in exchange for NFM's management of CDF's Wheels for Wishes program. *Id.* ¶¶ 40-42. America CAN! further avers that Bigley and Heiligman own both Metro Metals and NFM, and that they hold 100% of NFM's stock. *Id.* ¶¶ 29, 40. None of these facts shows that NFM had the type of control over Metro Metals that would make Metro Metals an alter ego of NFM, nor do they show that Metro Metals had the type of control over NFM that would make NFM an alter ego of Metro Metals. The only link between Metro Metals and NFM is that both are owned by Bigley and Heiligman. Other than Bigley and Heiligman's status at both companies, America CAN! has not shown a business relationship between the two that is typical of an alter ego, such as shared employees, a shared headquarters, or a shared board of directors. Cf. *DDH Aviation, L.L.C.*, 2005 WL 770595 at *2,*5; see *EsNtion Records, Inc.*, 2008 WL 2415977 at *4-*5. Notably, any ownership interest Bigley and Heiligman have in these companies is only in their individual capacities.

Even if Metro Metals were an alter ego of NFM, this would not result in NFM's contacts being imputed to Metro Metals. The only way that NFM's contacts would be imputed to Metro Metals under an alter ego theory would be if NFM was Metro Metals' alter ego due to Metro Metals' control over NFM. See *McCabe v. Henpil, Inc.*, 889 F. Supp. at 992.[2] America CAN!'s complaint does not establish that Metro Metals had any type of control over NFM, let alone the control necessary for an alter ego relationship.

Thus, the "control" or "alter-ego" theory will not support an assertion of either general or specific personal jurisdiction over Metro Metals due to NFM's contacts with Texas. In light of the foregoing, it is not necessary for this court to consider traditional notions of fair play and substantial justice.

The court concludes that it does not have specific or general personal jurisdiction over Metro Metals, either on the basis of its own conduct or on the basis of its being an alter ego of either CDF or NFM.

B. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

1. *The Legal Standard*

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic*

---

[2] See *supra* note 1.

*Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks, brackets, and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice

pleading standard to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" its claims against the three defendants "across the line from conceivable to plausible." See *id.* at 679, 683.

## 2. *Application*

The court concludes that America CAN! has stated a plausible claim for trademark infringement.

The facts in plaintiff's complaint, taken as true, show that CDF—which performs essentially the same charitable function as America CAN!—has a website that appears in search results near America CAN!'s website when users search America CAN!'s trademark, "Write off the car, not the Kid"® on Yahoo and Google. When coupled with America CAN!'s further assertion that wheelsforwishes.org's

placement on search results is due to unauthorized use of America CAN!'s trademark, America CAN!'s allegation of trademark infringement is plausible on its face.

The defendants' argument that keyword advertisements do not constitute a use in commerce, Defendants' Memorandum in Support of Joint Rule 12(b)(6) Motion to Dismiss at 6, 9-10, has little bearing on the present case, as America CAN! does not claim that any of the defendants purchased advertising keywords containing "Write off the car, not the Kid"®. *See generally* Plaintiff's Complaint. America CAN! responds to the defendants' argument regarding advertising keywords by asserting that America CAN! does not need to show in its complaint the specific means by which the defendants used "Write off the car, not the Kid"® to optimize search results. Response to Motion to Dismiss at 6. Rather, America CAN!'s claim, as articulated in the complaint, is that the defendants somehow altered search results through use of the trademark, whether that be through metatagging or some other method of search optimization. *See* Complaint ¶¶ 82-83, 84 (describing America CAN!'s objection to the use of the trademark "in connection with the listing" of defendants' websites); *see also* Response to Motion to Dismiss at 6, n. 3.

Accordingly, although America CAN! argues that metatagging is a method by which website owners have manipulated search results, Response to Motion to Dismiss at 5-6, America CAN! does not rely exclusively on that theory. See *id.* at 1-2 (arguing that defendants are "using phrases to gain attention and direct consumers to

their website" through "metatagging *or optimizing* of the phrase" Write off the car, not the Kid®) (emphasis added). For this reason, the defendants' extensive arguments that trademark infringement through metatag use is outdated, Defendants' Reply Memorandum in Support of Joint Rule 12(b)(6) Motion to Dismiss at 5-8, do not address the entirety of America CAN!'s claim.

The defendants also attack America CAN!'s claim by asserting that America CAN! does not allege any plausible facts supporting a finding of likelihood of confusion based on the order of search results. Defendants' Memorandum in Support of Joint Rule 12(b)(6) Motion to Dismiss at 10. The defendants' argument is based on the fact that the mark does not visibly appear in the search results, *id.* at 11, and the assertion that metatag use cannot serve as a basis for a claim of initial interest confusion. Defendants' Reply Memorandum in Support of Joint Rule 12(b)(6) Motion to Dismiss at 8-9. Notably, the defendants do not cite any Fifth Circuit precedent in support of their argument. *See* Defendants' Memorandum in Support of Joint Rule 12(b)(6) Motion to Dismiss at 10-11.

In the Fifth Circuit, trademark visibility has not been recognized as necessary to support a finding of likelihood of confusion. *Southwest Recreational Industries, Inc. v. FieldTurf, Inc.*, 01-50073, 2002 WL 32783971, at *7 (5th Cir. Aug. 13, 2002) ("[t]he gravamen for any action of trademark infringement . . . is whether the challenged mark is likely to cause confusion"); see *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d

188, 194 (5th Cir. 1998) (listing seven factors, not including visibility, that the court should consider in a likelihood of confusion analysis). Further, the precedent of this court does not suggest that lack of trademark visibility is determinative in keyword advertising cases, which similarly concern visible search result placement caused by invisible use of a trademark. See *Abraham v. Alpha Chi Omega*, 781 F. Supp. 2d 396, 423 (N.D. Tex. 2011) (Furgeson, J.) (finding that the use of search engine keywords to ensure that searches made on the internet direct users to the defendant's website may be unlawful if it "implies affiliation with, sponsorship by, or endorsement by" the plaintiff when no such relationship exists); see *Mary Kay, Inc. v. Weber*, 661 F. Supp. 2d 632, 646 (N.D. Tex. 2009) (Fish, J.) (noting in a keyword advertising dispute that any use of the plaintiff's trademark "without an explanation that the defendants are not [the plaintiff] and have no affiliation with [the plaintiff], is suspect," and could be unlawful if the use "implies affiliation with, sponsorship by, or endorsement by [the plaintiff]"). At least one other district court in this circuit has recognized that alleged metatag use may cause consumer confusion when the defendant, which offered products very similar to the plaintiff's, used the plaintiff's trademark in its metatags or internet code. *Clearline Technologies Ltd. v. Cooper B-Line, NC*, CV H-11-1420, 2012 WL 12893491, at *15 (S.D. Tex. July 2, 2012) (finding evidence of metatag use "sufficient to create an issue of material fact with respect to whether use of [the mark] was likely to cause confusion as to the source, sponsorship,

or affiliation of the [defendant's] products").[3]  Therefore, America CAN!'s claim does

not fail for lacking proof that the trademark itself is visible to consumers.

For these reasons, the court concludes that America CAN!'s factual allegations

support a plausible claim for trademark infringement.

## C.  Rule 12(f) Motion to Strike

### 1.  *The Legal Standard*

Rule 12(f) confers upon the court the authority, upon motion by a party or *sua*

*sponte*, to order as stricken from any pleading any "redundant, immaterial,

impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions under Rule 12(f)

are disfavored.  *Federal Deposit Insurance Corporation v. Cheng*, 832 F.Supp. 181, 185

(N.D. Tex.1993) (Sanders, Chief J.).  A court should not strike any portion of a

pleading as irrelevant unless: (1) there is no possible relation between the challenged

portion of the pleading and the underlying controversy; and (2) the challenged

portion may prejudice the moving party.  See *OKC Corporation v. Williams*, 461

F.Supp. 540, 550 (N.D. Tex.1978) (Higginbotham, J.).

---

[3]          The defendants' recitation of other federal district courts' holdings of
this issue is not determinative since the court is not obligated to follow the law of
sister circuits, however persuasive.

2. *Application*

The court concludes that paragraphs 27-81 of America CAN!'s complaint should not be stricken because they are relevant to issues of personal jurisdiction and trademark dilution, and because they are not prejudicial.

The defendants' argue that paragraphs 27-81 of America CAN!'s complaint should be stricken because the allegations contained therein are unrelated to America CAN!'s claims of trademark infringement and dilution. *See generally* Defendants' Joint Rule 12(f) Motion to Strike; Defendants' Memorandum in Support of Joint Rule 12(f) Motion to Strike (docket entry 17) at 1. The thrust of the defendants' contention is that none of the allegations concern the "creation, operation, or maintenance of CDF's subject website and none contain allegations regarding any alleged misconduct involving [the plaintiff's] . . . trademark." Defendants' Memorandum in Support of Joint Rule 12(f) Motion to Strike at 2-3. Thus, the defendants conclude that America CAN! included these allegations solely to "poison the well against [the defendants] in this lawsuit." *Id.* at 5.

America CAN! responds that paragraphs 27-81 are material to the issue of whether the defendants are alter egos of each other since these allegations "show the connections between the [d]efendants, and how the various entities shared and disseminated information infringing on America CAN!'s intellectual property and harming its goodwill and business." Response to Motion to Strike at 2-3. In their

- 29 -

reply, the defendants restate their prior arguments in addition to asserting that paragraphs 27-81 are irrelevant to the alter ego issue. Defendants' Reply Memorandum in Support of Joint Rule 12(f) Motion to Strike (docket entry 26) at 2-3.

It is clear to the court that paragraphs 27-81 are relevant not only to the issue of personal jurisdiction, both for the defendants individually and under an alter ego theory, but also to America CAN!'s claim of trademark dilution. While the defendants may believe that America CAN!'s choice of heading for the section containing these paragraphs seems somewhat acrimonious, it does not rise to the level of prejudice necessary to overcome the strong judicial preference against granting motions to strike. This is especially true since trademark dilution claims can lie when a trademark is "linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods." *Scott Fetzer Co. v. House of Vacuums, Inc*., 381 F.3d 477, 489 (5th Cir. 2004) (internal quotation marks and citations omitted). Thus, such a claim in the present case would have to rely on America CAN! showing that the defendants' fundraising activities are shoddy, unwholesome, or unsavory. The claims in paragraphs 27-81, if true, would support such an argument.

The defendants further argue that America CAN!'s allegations in paragraphs 27-81 should be stricken because they are "false and misleading." Defendants' Memorandum in Support of Joint Rule 12(f) Motion to Strike at 3. In support of this argument, the defendants offer evidence that Make-A-Wish America's CEO thinks very highly of the defendants' fundraising efforts. *Id*. at 3-4. This argument fails because the court cannot decide a disputed fact question on a motion to strike. *Augustus v. Board of Public Instruction*, 306 F.2d 862, 868 (5th Cir. 1962). Thus, the appropriate action of the court is to leave the sufficiency of the allegations for determination on the merits. *Id.*

## IV. CONCLUSION

For the reasons set forth above, Metro Metals' motion to dismiss for lack of personal jurisdiction is **GRANTED**, the defendants' Rule 12(b)(6) motion to dismiss is **DENIED**, and the defendants' Rule 12(f) Motion to Strike is **DENIED**. The plaintiff's claims against Metro Metals are **DISMISSED** without prejudice for lack of personal jurisdiction.

**SO ORDERED.**

March 11, 2019.


A. JOE FISH
**Senior United States District Judge**